BENJAMIN W. FREDERICKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SEDGWICK KISTLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38608, 38609.   Promulgated November 24. 1930.

*Ralph E. Tibbetts, Esq.,* for the petitioners.
*Harold Allen, Esq.,* and *Willis R. Lansford, Esq.,* for the respondent.

OPINION.

SEAWELL: It is stated in behalf of the petitioners that neither this Board nor the courts have rendered any decision on the issue raised by the facts of this case.

In this instance, as in numerous others, the directors and stockholders of the Kistler Leather Co. deemed it advisable to eliminate an existing deficit in order to present a better financial aspect of the corporate business. With a view to accomplishing such result, the second preferred stockholders, of whom there were nineteen, seven being directors, of whom petitioners were two, pursuant to action of the stockholders and directors of the company voluntarily surrendered 25 per cent of their holdings of second preferred stock, which stock was canceled by the company. In one part of the stipulation by counsel it is recited that this was done "without consideration," but in a subsequent paragraph, indicating—as we view it—what was meant by such expression, it is stated: "There was no agreement or arrangement or understanding between either of the petitioners and the Company whereby the petitioners should ever receive from the Company any direct consideration for stock so surrendered, and the petitioners have never received any such direct consideration."

The use of the word "direct" twice, in the latter paragraph, was evidently intended to explain and qualify the meaning of the expression "without consideration" previously used. When construed together they simply mean there was never any direct or express consideration received for such action nor any agreement that there would ever be any such consideration received.

At the date of the reduction in the second preferred stock no change was made in the first preferred stock, none of which was owned by either of the petitioners. There were then outstanding 35 shares of the common stock, of which the petitioners and five other directors each owned five shares.

Simultaneously with the reduction of the second preferred stock the charter of the company was amended, authorizing the issuance of 10,000 shares of common stock, without par value, and each of the holders of common stock received 200 shares of this no-par stock

in lieu of each share held of the old stock of the par value of $100. Each of the petitioners by this exchange received 1,000 shares of the new common stock without par value.

The percentage of interest of each of the petitioners in both the outstanding second preferred stock and the outstanding common stock of the company was the same after as before the surrender of the second preferred stock and there was then no change in the personnel of the second preferred stockholders and they continued to hold the same proportionate interest in the second preferred stock.

If the surrender by the petitioners of 25 per cent of their second preferred stock be considered merely as a gift, no deductible loss for same is allowable under the Revenue Act of 1924.

The contention of the petitioners, however, is that the second preferred stockholders substantially changed their asset preferences when they surrendered 25 per cent of their second preferred stock; that by so doing their shares were worth 25 per cent less than previous to their voluntary relinquishment of that percentage of the stock they held; and that at that time, by such surrender of second preferred stock, they sustained a loss for which they could never receive any sum to make up the loss so suffered.

It is further insisted that the deficit existing on the books of the Kistler Leather Co. was passed directly to the second preferred stockholders by the action taken in the surrender and cancellation of 25 per cent of their second preferred stock and that such constituted a closed transaction. We do not so view matters.

It is true that the second preferred stock was limited to cumulative dividends at the rate of 6 per cent per annum and in case of liquidation participation in the assets of the company was limited to such unpaid and cumulative dividends and $100 a share. In our opinion, the surrender by petitioners of 25 per cent of their second preferred stock and the cancellation of the same did not necessarily entail any actual loss upon them at that time nor could it then be determined that they would ever sustain a loss by reason of their action.

The financial status of the Kistler Leather Co. was such that it was deemed best, from a business point of view, to wipe out a deficit appearing on its books, and the reason for the action taken in surrendering by stockholders of 25 per cent of second preferred stock held by them to effect such result was evidently based on their best judgment and furnished sufficient consideration for such action, and in consequence thereof the corporation was put in better business position and the holders of common stock, of whom petitioners were two, each, as a direct result of the plan evolved and adopted, re-

ceived 1,000 shares of no-par-value stock for the five par-value shares previously held.

The surrender of the second preferred stock for cancellation did not result in changing the proportionate interest of the petitioners in the second preferred stock outstanding.

The actual asset value in the aggregate of the second preferred holdings before surrender and after surrender was the same.

The Kistler Leather Co. made a 25 per cent reduction in its second preferred stock, the holders of the same surrendering such to the company, which canceled it. It amended its charter, changing its authorized issue of common stock of 10,000 shares, of par value of $100 each, to 10,000 shares, without par value. The 35 shares of outstanding common stock of par value of $100 each before the charter amendment were after such amendment surrendered to the company and in place thereof 7,000 shares of no par value were issued to the holders of the former. Such transactions, in our opinion, worked such a recapitalization as constituted a reorganization within the meaning of section 203 (h) (1) of the Revenue Act of 1924.

In *Helene Baldwin Burdick, Executrix*, 20 B. T. A. 742, in construing section 202 (c) (2) of the Revenue Act of 1921, we held:

\* \* \* The mere surrender to a corporation of certain shares of preferred stock to be canceled, with nothing to be received from the corporation in exchange therefor, is not a reorganization within the meaning of section 202 (c) (2).

Of course, in making this statement we do not mean to hold that a recapitalization under a proper state of circumstances may not be a reorganization. For example, if corporation A has an outstanding capital stock of $100,000 represented by 1,000 shares of common stock of $100 par value per share, and decides to reduce its capital stock to $50,000, to be represented by 500 shares of common stock of a par value of $100 each, and provides that each stockholder shall receive in exchange one share for each two shares now held, we think that would undoubtedly be a reorganization because there would be the exchange contemplated by section 202 (c) (2) and in such transaction no gain or loss would be recognized.

In the instant case, the same principle and reasoning are applicable in construing section 203 (h) (1) of the Revenue Act of 1924. See also *Fred D. Cock*, 2 B. T. A. 1044.

We are of the opinion, as heretofore indicated, that the evidence shows the Kistler Leather Co. effected a reorganization within the meaning of section 203 (h) (1) of the Revenue Act of 1924 and, therefore, in the circumstances of the instant case, the petitioners sustained no loss and the respondent's determination is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MURDOCK, concurring: I concur in the result reached in this case for reasons set forth in my dissenting opinion in the case of *George M. Wright*, 18 B. T. A. 471, and also on authority of *Edith Scoville*, 18 B. T. A. 261.

LANSDON dissents.

